

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

**TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed September 26, 2006            **United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In Re: | § § | |
| JNS AVIATION, LLC, | § § | CASE NO. 04-21055-RLJ-7 |
| Debtor | § | |

_____

| | | |
|---|---|---|
| NICK CORP., | § § | |
| Plaintiff | § § | |
| VS. | § § | ADVERSARY NO. 04-2028 |
| JNS AVIATION, INC., JNS AVIATION, LLC, JNS AIRCRAFT SALES, LLC, J. MALCOM SHELTON IV, Individually, JAMES N. SHELTON, Individually, and JNS AVIATION GROUP | § § § § § § § | |
| Defendants | § | |

## MEMORANDUM OPINION

The Court considers the Second Motion to Compromise Claim of Estate against JNS

Aviation, Inc., JNS Aviation, LLC, JNS Aircraft Sales, LLC, J. Malcom Shelton IV, and James N.

Shelton submitted by the chapter 7 trustee, Kent Ries (the "Trustee"), which proposes to settle claims asserted in this adversary proceeding. Nick Corp., the plaintiff in this adversary proceeding and a creditor in this bankruptcy case, opposes the settlement. Hearing on the settlement was held May 15, 2005, with the parties submitting letter briefs in support of their respective positions – on May 17, 2006 (by Nick Corp.), on June 2, 2006 (by the Trustee), on June 6, 2006 (by Nick Corp. in reply to the Trustee's brief), on June 13, 2006 (by the defendants in this adversary), and on June 16, 2006 (again by Nick Corp., in reply to defendants).

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Memorandum Opinion contains the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

**Background and the Compromise**

Nick Corp. initiated the captioned adversary by filing suit in the United States District Court for the Northern District of Texas, Amarillo Division, on February 14, 2004. The suit raises four causes of action: Count I - Fraud; Count II - Fraudulent Transfer; Count III - Piercing the Corporate Veil, and; Count IV - Breach of Fiduciary Duties. Nick Corp. brought this suit as a means to collect on a judgment it obtained in a prior action brought in the United States District Court of Delaware against JNS Aviation, LLC ("JNS Aviation" or "debtor"), the debtor in this bankruptcy case. The Delaware suit resulted in a default judgment in favor of Nick Corp. and against JNS Aviation in the amount of $1,800,000 (the "Judgment"). The Judgment was entered June 12, 2002.[1] JNS Aviation filed bankruptcy with this Court under chapter 7 of the Bankruptcy

---

[1] On July 22, 2002, a Certificate of Judgment for Registration in Another District was filed in the United States District Court for the Northern District of Texas.

Code on September 2, 2004. Shortly thereafter, on September 23, 2004, on JNS Aviation's motion, the present suit was removed to this Court. The Trustee intervened in this lawsuit and contends, on behalf of the bankruptcy estate, that he owns three of the four causes of action brought by Nick Corp., specifically the fraudulent transfer claim, the piercing the corporate veil claim, and the breach of fiduciary duties claim. The Trustee and defendants JNS Aviation, JNS Aviation, Inc., JNS Aircraft Sales, LLC, J. Malcom Shelton IV, and James N. Shelton propose to settle the three claims for the sum of $160,000. Nick Corp., as the major unsecured creditor in the case, opposes the settlement contending, among other things, that the Trustee is receiving inadequate value for the claims and that the Trustee is attempting to settle out from under Nick Corp. certain claims that may not be owned by the Trustee. Nick Corp. has filed its proof of claim asserting an unsecured claim of $787,885.28, which is the amount it reflects as still owing under the Judgment after all post-judgment credits are applied.[2] Pl.'s Ex. 10.

As indicated by the title of the motion, the Trustee previously sought approval of a settlement before the Court. By such prior settlement, the Trustee sought the Court's approval of a settlement in the amount of $140,000 in resolution of the fraudulent transfer claim. Upon hearing on the Trustee's prior motion, the Court determined that the Trustee had not sufficiently considered other claims potentially held by the Trustee, specifically the piercing theories and the breach of fiduciary duties claim, and therefore denied the settlement. The Court instructed the Trustee to file a formal election with the Court stating whether he intended to administer these two causes of action or to abandon them. The Trustee filed his election stating his intention to

---

[2]The Delaware suit was based on an alleged breach of a repurchase agreement by JNS Aviation under which JNS Aviation was obligated, under certain conditions, to repurchase an aircraft bought by a predecessor to Nick Corp. The credits include the value of the aircraft.

retain the causes of action and, in so doing, entered into the settlement that is presently before the Court.

### The Debtor's Schedules

As noted, JNS Aviation filed this chapter 7 proceeding on September 2, 2004, approximately six and a half months after Nick Corp. had initiated the adversary. A review of the Schedules filed in this case reflects that JNS Aviation represented that it owns only two assets. The Schedules recite that JNS Aviation is the co-owner of a condominium in Avon, Colorado, valued at $89,000, which secures a claim of $56,000 held by Liberty Bank, which is the only secured creditor listed in the case. The other listed asset is the "fraudulent conveyance claim" asserted by Nick Corp. Its value is listed as unknown. The Schedules recite that JNS Aviation has three priority tax claims, one to Potter County for $34,366.33, one to Randall County for ad valorem taxes in an amount unknown, and one to the state of Texas in the amount of $80,412.80 for sales, excise, and use taxes based on sale of aircraft. The three tax claims are listed as disputed claims. Nick Corp. is the only unsecured creditor in the case, reflected on the Schedules as a judgment claim in the amount of $1.8 million, which JNS Aviation lists as a disputed claim. J. Malcom Shelton IV ("Malcom Shelton") and James N. Shelton ("James Shelton"), two of the defendants in this adversary proceeding, each own fifty percent of JNS Aviation, according to the Statement of Financial Affairs. An addendum to the Schedules states that JNS Aviation, at the time of the bankruptcy filing, had not been actively engaged in business for approximately two years and that the information contained in the Schedules is "based upon the best information reasonably available to the managing member of the Debtor at the time of filing." The addendum further recites that the information pertaining to the tax claims is based upon either pleadings or

notices submitted by the respective taxing authorities. The addendum recites fourteen different taxing entities that assert ad valorem taxes as part of the scheduled claim. Despite the disclosure made in the Schedules regarding the condominium in Colorado, the addendum essentially undermines the information contained in the Schedules by stating as follows:

> The full nature and extent of the Debtor's ownership interest in the Colorado condominium is not known. Likewise, the person executing the schedules does not have any ongoing knowledge of the market value of similar real estate in Colorado. The valuation stated in the schedules is based upon information in the Debtor's files that is most likely dated and may not be an accurate representation of the fair market value of that asset.

James Shelton signed both the Schedules and the addendum to Schedules.

## Discussion

In assessing the merits of a settlement, a bankruptcy court must determine if the settlement is fair and equitable and in the best interest of the estate. *Matter of Foster Mortg. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995), citing *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980). The court must compare the terms of the settlement with the likely rewards of litigation. *Foster Mortg.* at 917. In making this evaluation, the courts in the Fifth Circuit employ a three-part test, considering the following: (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and in law; (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise. *Id*. Elaborating on "all other factors," the *Foster Mortg.* court listed several additional considerations adopted from prior opinions. Looking first at its opinion in *Matter of Texas Extrusion Corp.*, 844 F.2d 1142, 1159 (5th Cir. 1988), the court reiterated that "in the bankruptcy context, the interests of the creditors not the debtors are paramount." *Foster Mortg.* at 917. The court clarified that even though the desires of the

creditors are not binding, a court should carefully consider the wishes of the majority of the creditors. *Id*. Next, the court looked at the extent to which the settlement was truly the product of arms-length bargaining, and not of fraud or collusion. *Id*. The court in *Foster Mortg.* vacated the proposed settlement as the courts below had given no consideration to the issues it considered dispositive, namely that most all creditors in interest opposed the settlement and the settlement was reached between insiders without the participation of the creditors. *Id*.

In comparing the present settlement with the prior settlement that the Court denied, the only real difference is the additional $20,000 that is proposed to be paid to the Trustee and the attempted clarification that the Trustee, in consideration of the $160,000, will release and dismiss the fraudulent transfer, piercing the corporate veil, and breach of fiduciary duties claims. The hearing on the matter was, in effect, merely in addition to what the Court heard at the hearing on the first motion.

1. The Fraudulent Transfer Claim

The fraudulent transfer claim provides the Trustee with the greatest leverage on the settlement. The fraudulent transfer claim includes five possible fraudulent transfers. First is an alleged transfer of the condo in Colorado, which, as noted above, is the only hard asset listed on the debtor's Schedules. The Trustee alleges that the condo was purportedly transferred to defendant JNS Aircraft but, to further complicate the case, is still titled in the debtor's predecessor JNS, Inc. The potential value of the condo is questionable as it is purportedly a one-twentieth timeshare interest, has an estimated value of $89,000, and secures a debt of $56,000. Moreover, the Trustee points out that the defendants expressed little reluctance to conveying the condo back to the bankruptcy estate. Given the costs associated with owning the timeshare, not

the least of which are the payments to the secured creditor, and the costs associated with selling the timeshare (estimated to be approximately ten percent), the Trustee has determined that the perceived equity in the timeshare would be difficult to recover.

The second alleged fraudulent transfer is actually a series of payments made by the debtor to defendants Malcom Shelton and James Shelton. The Trustee alleges that the debtor made loan repayments to James Shelton in the amount of $70,000 on March 8, 2002, and $80,000 on April 17, 2002. The payments, according to the Trustee, were made on a note in the principal amount of $150,000 dated March 1, 2002, with a maturity of March 1, 2003. The loan repayments to Malcom Shelton were made in the amount of $290,000 on March 9, 2001, $75,000 on December 19, 2001, and $125,000 on April 17, 2002, all of which were made on a note in the original principal amount of $490,000 dated February 12, 2001, with a maturity of December 12, 2002. The Trustee asserts that the payments were made with the actual intent to hinder, delay, or defraud the debtor's creditors and are thus fraudulent transfers under the Texas Fraudulent Transfers Act. Defendants James Shelton and Malcom Shelton each contend that the payments are precisely what they purport to be – repayments of loans – and were thus made for reasonable equivalent value.

The third alleged fraudulent transfer concerns two $40,000 "commission" payments made, one to James Shelton and one to Malcom Shelton, which were paid upon the debtor selling an airplane in April of 2002. The Trustee challenges the amount of the commissions as excessive and thus contends the commissions were paid with the actual intent to hinder, delay, and defraud the debtor's creditors. The defendants contend that the commissions were fair and reasonable, were properly earned by them, and that the debtor actually realized a profit in excess

of $5,600 from the transaction.

The fourth alleged fraudulent transfer concerns a $50,000 transfer from the debtor to JNS Aircraft on July 31, 2002, apparently for no consideration. The problem, however, from the Trustee's perspective, is that the funds can be traced to a $50,000 advance made by the debtor's secured lender to the debtor in early May of 2002 for the purpose of making an escrow deposit on the debtor's purchase of an airplane and that, as a result of the loan transaction, the secured lender would hold a lien against such funds thereby eliminating any equity that may exist in the funds.

The fifth alleged fraudulent transfer is, according to the Trustee, the most hotly contested issue between the parties (the Trustee, or Nick Corp., and the defendants). This concerns the debtor's cancellation, on January 1, 2002, of $200,000 in notes receivable held on its books that represent obligations owed to the debtor by James and Malcom Shelton. The Trustee asserts that removal of the $200,000 notes receivable from the debtor's books was done without consideration flowing back to the debtor and was thereby done with actual intent to hinder, delay, and defraud. The defendants contend that the $200,000 notes receivable arose from a payment to the Sheltons in 1998 that was originally intended to constitute a distribution to the Sheltons, not a loan. The defendants then argue that, for corporate and tax reasons, the distribution was re-characterized at the end of 1998 as a loan (and thus the creation of the notes receivable) but were reclassified again in 2002 as proper distributions on capital accounts. Of the five alleged fraudulent transfers, the Trustee attributes the greatest value to this transfer.

2. <u>Breach of Fiduciary Duties Claim</u>

The Trustee gives little value to the breach of fiduciary duties claim. This claim is based,

according to the Trustee, on Delaware law and is premised upon the theory that once JNS Aviation entered a "zone of insolvency," the fiduciary duties of the corporate officers and directors shifted from the shareholders to the creditors. The Trustee, citing *Vartec Telecom, Inc.*, 335 B.R. 631 (Bankr. N.D. Tex. 2005), concludes there is little value for this claim as, under Texas law, this theory has not been recognized as a viable cause of action.

    3. <u>Piercing the Corporate Veil Claim</u>

       (a) <u>Arguments of the Parties</u>

The extensive letter briefs submitted by the parties regarding the merits of the settlement center on the veil piercing theories and whether they have been properly considered by the Trustee in negotiating the settlement. In this regard, the Trustee accords little or no value to the veil piercing theories as he argues they are remedial in nature and must be tied to a substantive cause of action; that, as pled, the veil piercing theories relate only to the debtor's liquidation of its assets (referring to the alleged fraudulent transfers made from the debtor by certain of the named defendants). As the settlement resolves the alleged fraudulent transfers, the Trustee reasons that the veil piercing theories add no real value to the claim for piercing held by the estate as any such claim would be measured by the value of the properties allegedly fraudulently transferred. The Trustee specifically contends that the allegations asserted by Nick Corp.'s latest pleading, the Plaintiff's First Amended Complaint, do not raise any of the veil piercing theories as creating liability and thus a potential remedy for Nick Corp.'s Judgment, which was, in turn, based on a breach of contract claim.

Defendants JNS Aviation, Inc., JNS Aviation Group, LLC, JNS Aircraft Sales, LLC, Malcom Shelton, and James Shelton obviously support the Trustee's position. In addition, they

argue that, under Texas law, a member of a limited liability company, such as JNS Aviation, cannot be liable for a contractual obligation of the limited liability company, citing the recent Texas Supreme Court case of *Willis v. Donnelly*, WL 1506258 (Tex.) in support of their position.

Nick Corp. vigorously opposes the positions of both the Trustee and the defendants. Nick Corp. asserts that the veil piercing theories are not tied solely to the claims for fraudulent transfer and breach of fiduciary duties. Nick Corp. argues that the veil piercing theories create recourse against the defendants and that the breach of contract claim, as liquidated by the Judgment, provides the measure of liability. Nick Corp. argues that the Trustee is asserting inconsistent positions. First, according to Nick Corp., the Trustee has stated, in conclusory fashion, that he is settling what the estate owns and is not attempting to settle any personal claims held by Nick Corp., thereby implying that, to the extent Nick Corp.'s veil piercing claim is viewed as a remedy for a breach of contract, such claim is personal to Nick Corp. and thus not subject of the settlement; then the Trustee argues that the veil piercing theories have not been pled in a manner that would raise them as a remedy for the breach of contract claim. Nick Corp. submits that the Trustee's position raises a fundamental misunderstanding between the Trustee and defendants concerning what they are actually settling, as the defendants unequivocally state that the settlement resolves *all* claims arising from any veil piercing theories, while the Trustee asserts it resolves all claims that are *not* personal to Nick Corp.

(b) <u>Whether Veil Piercing has been Pleaded and is Assertable as Remedy for Judgment</u>

The Court first addresses whether Nick Corp.'s First Amended Complaint alleges the veil piercing theories as a remedy assertable against the defendants for JNS Aviation's liability under the Judgment. In this regard, the Court does not find the First Amended Complaint to be lacking.

At paragraph 44 of the complaint, Nick Corp. specifically alleges that various of the defendants constitute a single business enterprise and should be treated as the same entity for purposes of "liability for Nick Corp.'s judgment." At paragraph 45 of the First Amended Complaint, Nick Corp. alleges that the assets of the debtor have been depleted and that various defendants have caused JNS Aviation to transfer substantially all of its assets "for the purpose of avoiding JNS's obligations and defrauding Nick Corp." At paragraph 46, Nick Corp. alleges that JNS Aircraft Sales, LLC "is being used as a means to evade an existing legal obligation." Paragraph 46 also refers to the obligations that arose under the so-called "Guaranteed Repurchase Provision," which provision was at issue on the lawsuit giving rise to the Judgment. Finally, again at paragraph 46, the First Amended Complaint states that "JNS Aviation now has no assets from which it can satisfy Nick Corp.'s Judgment, yet J.M. Shelton, M. Shelton, J. Shelton, JNS Aviation, JNS Aircraft and/or Shelton Estate have significant assets."

Both the Trustee and the defendants contend that since the veil piercing theories are remedial only and given that the breach of contract claim has already been reduced to judgment, the assertion of the veil piercing theories within the context of the present lawsuit can relate only to the fraudulent transfer and breach of fiduciary duties claims. While it is difficult to follow the logic of this argument, the Court, nevertheless, does not construe Texas law to require that the substantive cause of action be litigated within the same lawsuit are the veil piercing theories. *See Matthews Const. Co., Inc. v. Rosen*, 796 S.W.2d 692 (Tex. 1990) (President of Houston Pipe & Supply Co. sued under an alter ego theory to recover on a judgment previously entered against Houston Pipe & Supply Co.). Nick Corp. is simply an unsecured creditor in this case and is attempting, through this adversary proceeding, to hold third-parties, i.e. parties other than the

- 11 -

primary obligor, liable on the debt. Texas law does not prevent such action. *Id*.

      (c)  <u>Whether Veil Piercing Claim is Property of the Estate</u>

The foregoing discussion brings the Court to the issue of whether the bankruptcy estate, and thus the Trustee, actually owns the veil piercing theories. The Fifth Circuit has analyzed this type of question at length. In *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987), the Fifth Circuit considered the issue of whether the automatic stay under section 362 of the Bankruptcy Code stayed a pending state court action based on alter ego brought by Eastway Delivery Service, Inc. ("Eastway") against the debtor S.I. Acquisition and three non-bankrupt defendants. Whether the section 362 stay applied or not hinged on whether the alter ego cause of action constituted either an action *against the debtor* in violation of section 362(a)(1) or *an action to obtain property of the estate* in violation of section 362(a)(3). On the section 362(a)(1) question, the court held that such provision generally applies only to bar proceedings against the debtor although recognizing that some courts have held that in circumstances where the debtor and the non-bankrupt party are considered one entity or as having a uniform interest, the section 362(a)(1) stay may suspend an action against the non-bankrupt defendant. *Id*. at 1148. On the question of whether the section 362(a)(3) stay – stay of an act to obtain property of the estate – was implicated, the court reexamined its prior decision in *In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir. 1983), in which the court addressed whether the section 362 stay halted an action against the debtor's sole stockholder based on (1) the corporate trust fund doctrine, (2) denuding the corporation, and (3) fraudulent transfers under the Texas Fraudulent Transfers Act. The court in *S.I. Acquisition* noted that in *MortgageAmerica* it had concluded that all three causes of action were property of the bankruptcy estate and were thus stayed under section 362(a)(3). *Id*. at 1148-

49. The panel revisited the analysis of *MortgageAmerica*. The court noted that the estate is comprised of all "legal or equitable interests of the debtor in property as of the commencement of the case." *Id*. at 1149. This includes "rights of action as bestowed by either federal or state law." *Id*. The corporate trust fund theory and the denuding doctrine asserted in *MortgageAmerica* were characterized as similar avenues of recovery assertable by the debtor itself, not just an affected creditor. *Id*. These are the types of actions that are created for the benefit of the corporation, i.e., to vindicate an injury to the corporation caused by the misdeeds of control persons. *Id*. As for the fraudulent transfer claims, the court noted that in *MortgageAmerica* it found that such an action was assertable only by a creditor under Texas law but was deemed to constitute an action to recover property of the estate on the premise that the debtor, MortgageAmerica, "retained a legal or equitable interest in the property fraudulently transferred . . . ." *Id*. at 1150. The court stated, "[we] held that property that the debtor has fraudulently conveyed remains 'property of the estate . . . .'" *Id*. at 1151.

Upon applying the principles derived from *MortgageAmerica*, the court held that Eastway's alter ego claim was likewise property of the estate. *Id*. at 1153. The court noted that, under Texas law, alter ego is a remedy rather than a cause of action; it is one distinct method of piercing the corporate veil (one of six methods). *Id*. at 1152. Alter ego applies when there is such an identity or unity between a corporation and an individual (or other entity) that all separateness between the parties has ceased and a failure to disregard the corporate form would be unfair or unjust. *Id*. The alter ego theory rests upon an identity theory that the corporation and the control person are a single entity and that alter ego constitutes a remedy available to all creditors, but "does not rest upon a particular creditor's dealings with or reliance on the control entity, nor . . . a

showing of fraud on a particular creditor." *Id*. The most important consideration, according to the court, is whether a corporation could assert an action against itself based upon alter ego. *Id*. The court then noted that it is not inconsistent to say that a corporation may pierce its own veil and hold accountable those who have misused the corporation in order to meet its corporate obligations. *Id*. The court recognized the practical difficulty that arises as the persons who have so completely dominated the corporation so as to constitute an alter ego are not likely to institute an action to determine their own liability for corporate debts. *Id*. The corporation therefore needs an independent voice, such as a bankruptcy trustee, to act to protect the interests of the corporation's creditors. *Id*. The court concluded that, as with the claims in *MortgageAmerica*, alter ego is usually asserted by the corporation's creditors but that there is theoretically nothing under Texas law that prohibits a corporation from asserting on its own an action based on alter ego. *Id*. The court therefore held that alter ego is a "right of action" belonging to the debtor and, as such, is property of the estate within the meaning of section 541(a)(1) of the Bankruptcy Code.

The case of *Matter of Educators Group Health Trust*, 25 F.3d 1281 (5th Cir. 1994) is the third major case in which the Fifth Circuit has addressed the question of whether a cause of action constitutes property of the estate. In *Matter of Educators*, the circuit addressed this issue in depth.[3] The court reviewed its prior decisions in both *MortgageAmerica* and *S.I. Acquisition*. The court first recognized that the term "legal or equitable interest" used under section 541(a)(1) of the Bankruptcy Code has been defined broadly to include causes of action. *Id*. at 1283. The court then reasoned that if a cause of action belongs to the bankruptcy estate, the trustee has

---

[3]In *Matter of Educators Group Health Trust*, various school districts, which were creditors of the debtor, had initiated a lawsuit in state court against principals of a third-party administrator of the debtor, which provided health benefits to teachers. 25 F.3d 1281.

exclusive standing to assert the claim. *Id*. at 1284. "If on the other hand, a cause of action belongs solely to the estate's creditors, then the trustee has no standing to bring the cause of action." *Id*. at 1284. The court held that a cause of action belongs to the bankruptcy estate if, under applicable state law, the debtor could have raised the claim as of the commencement of the case. *Id*. at 1284. The court then stated as follows:

> As part of this inquiry, we look at the nature of the injury for which relief is sought. . . . If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate. [citing *S.I. Acquisition*] . . . Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case and thus is not property of the estate.

*Id*. at 1284. Critical to the court's holding in *Matter of Educators* is the notion that the court must consider the relationship between the debtor and the nature of the injuries suffered. The court then turned to the various causes of action asserted in the case. The court held that the following causes of action alleged a direct injury to the debtor: negligent management of debtor causing it to become insolvent; conspiracy to commit fraudulent transfers; conspiracy to make debtor insolvent and to commit fraud on debtor; claim that defendants breached their contracts with debtor, as well as duties of good faith and fair dealing; claim that defendants unjustly enriched themselves with funds of debtor; claims that defendants breached their fiduciary duties. *Id*. at 1285-86. The court held that the following causes of action did not belong to the bankruptcy estate, thus were exclusively assertable by the creditor: claims under the Texas Deceptive Trade Practices Act; claims under the Texas Insurance Code; claims based on fraud and conspiracy to commit fraud (to the extent they were based on or alleged false representations to the plaintiff creditors); negligence based on breach of duty of care owed to the plaintiffs; claims of negligent

misrepresentation of financial status to the plaintiffs. *Id.* at 1286. The court noted that the mere fact that the debtor's representatives participated in the acts or omissions giving rise to the cause of action does not prevent the cause of action from belonging to the bankruptcy estate. *Id.* Such conduct may give the defendant a defense to the cause of action, but does not preclude the debtor from *bringing* the claim. *Id.* A defense goes to the resolution of the claim and not the ability of the debtor to assert the claim. *Id.*

        (d) <u>How Veil Piercing Impacts the Compromise</u>

Nick Corp.'s claim for piercing incorporates allegations that the debtor and the other defendants are alter egos of one another, that they all constitute a single business enterprise, and that the debtor JNS Aviation was used as a sham to perpetuate a fraud. Upon applying the foregoing Fifth Circuit precedent, particularly the analysis of *Matter of Educators Group Health Trust*, to the piercing allegations here, the Court arrives at three mutually exclusive conclusions. First, if JNS Aviation were a typical debtor and therefore had several creditors, the Court could conclude that the piercing claims impact the entire creditor body as the net effect of such claims, if true, is to deprive the debtor entity of assets that could be used to satisfy the claims of all creditors. Second, given that Nick Corp. actually holds the only major unsecured claim against the debtor, and given the magnitude of such claim, such circumstance serves to blur the distinction between injury to the corporation and injury to the creditor. Third, were the Court simply considering the settlement as a compromise of the claims for fraudulent transfer and breach of fiduciary duties, the settlement would be approved. In this regard, the Trustee thoroughly considered and evaluated such claims within the parameters of the three-part factor driven test employed in the Fifth Circuit – the probability of success, the complexity of the litigation, and other factors bearing


on the compromise. Given that the Trustee has sufficiently considered the relevant factors in reaching the compromise and, in so doing, has determined a compromise of such claims would be fair and equitable and in the best interests of the estate, taking into account the terms of the settlement with the likely rewards of going forward with litigation, the Court would likewise be satisfied that the standard for approval has been met. Problems arise, however, when the veil piercing theories are included within the compromise. First, as a threshold, it appears there may be a fundamental misunderstanding between the Trustee and the defendants concerning what is being settled. Given the veil piercing theories are arguably property of the bankruptcy estate and thus the Trustee is responsible for administering such asset, there should be no question between the parties concerning whether the settlement resolves the veil piercing theories in full or not. The defendants' position is that all conceivable claims under veil piercing are resolved. On this point, the Trustee is somewhat ambivalent – he is settling what he owns. The second problem is that given the virtual elimination of the distinction between injury to the debtor and its creditor Nick Corp., Nick Corp.'s position regarding the settlement becomes, in the Court's view, the critical factor in determining whether to approve the settlement. *See Matter of Foster Mortg. Corp.*, 68 F.3d 914.

The Trustee has been placed in an exceedingly difficult position in this case. The debtor's schedules are of little help. Every statement, representation, and disclosure is conditioned in some fashion. The condo in Colorado *may* be owned by the debtor; its value "may not be accurate." The only other asset listed is the "fraudulent transfer claim" with no mention made of the other claims asserted by Nick Corp. Nick Corp.'s judgment of $1.8 million is listed as "disputed" although it was a final judgment. There may be three creditors holding priority tax claims or there

may be as many as fourteen. James Shelton signed the schedules based on the "best information reasonably available." This bankruptcy case was obviously filed as a litigation tactic. The Sheltons and the other defendants preferred to deal with a bankruptcy trustee rather than Nick Corp. The result is that the Trustee is administering a bankruptcy case in which the only asset in the case is a pending lawsuit in which the Trustee seeks a recovery against the very parties that are charged with the responsibility of insuring that the debtor's assets are fully disclosed and recovered.

The so-called "other factors" bearing on the wisdom of the compromise include practical problems faced by the Trustee. The Trustee does not have available resources with which to employ counsel to handle the lawsuit. The Trustee recognizes that a trial will be lengthy and expensive. It is questionable whether counsel could be obtained on a contingent fee basis. The settlement will generate sufficient funds to pay the priority claims and the Trustee's expenses associated with administering this case. Nick Corp. has not offered to guarantee payment of the priority claims and has not offered to prosecute the claims on behalf of the bankruptcy estate at its own expense. In effect, Nick Corp. expects the Trustee to bear all risks associated with the litigation. The alternative appears to be abandonment of the lawsuit thereby allowing Nick Corp. to prosecute the claim for its sole benefit. In short, the Court is sympathetic to the Trustee's plight. But, as noted above, Nick Corp. is the only unsecured creditor in the case and its position on the compromise is critical to the Court's consideration of whether the settlement should be approved. The confusion between the parties concerning *what* they are settling coupled with Nick Corp.'s rejection of the settlement prevents this Court from approving the settlement.

**Conclusion**

In considering the various factors and complications associated with the settlement, the Court can only conclude that it would approve the settlement as a resolution of the fraudulent transfer and breach of fiduciary duties claims. It cannot approve the settlement to the extent it includes the veil piercing theories. In this regard, the Court also finds it impossible to parcel out the veil piercing theories in a fashion that would allow settlement of such theories to the extent they are related to the fraudulent transfer and breach of fiduciary duties claims. The Court, therefore, cannot approve the settlement as submitted. The Court will approve the settlement as a resolution of the fraudulent transfer and the breach of fiduciary duties claims if the Court is advised within twenty days of entry of the order entered on this Memorandum Opinion that the Trustee and the defendants agree to so settle the case.

### End of Memorandum Opinion ###