

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 9, 2009**                                    **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JNS AVIATION, LLC, | § | CASE NO. 04-21055-RLJ-7 |
| | § | |
| DEBTOR | § | |

### MEMORANDUM OPINION

### Introduction

The Court considers the two motions filed by Kent Ries, the chapter 7 trustee (the

"Trustee" or "Ries"), requesting allowance of compensation and reimbursement of expenses for

his work as attorney for the bankruptcy estate.  By the Court's order of March 25, 2008, the

Court abated both its consideration of and further proceedings on the motions pending final

administration of the bankruptcy case and, in particular, a final resolution of adversary number

04-2028, styled *Nick Corp., Plaintiff v. JNS Aviation, Inc., JNS Aviation, LLC, JNS Aircraft*

*Sales, LLC, J. Malcom Shelton, IV, and James N. Shelton, Defendants* (the "Adversary

Proceeding"). On October 28, 2008, the Court issued its order placing the Trustee's motions for compensation under advisement.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). This Memorandum Opinion contains the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

## Background

1. The First Motion for Fees and Expenses

By the first motion Ries filed seeking approval of attorney's fees and reimbursement of expenses, he sought approval of attorney's fees in the amount of $67,322.50 and expenses of $1,036.62 for a total of $68,359.12. The Court considered the motion and by its order entered May 21, 2007, the Court approved fees and expenses of $31,609.12 and reserved for further consideration the balance of $36,750. Nick Corp., the major creditor in this case (and plaintiff in the Adversary Proceeding), had objected to allowance of the $36,750 (the "Disputed Fees"). The Disputed Fees all relate to services provided by Ries as attorney for the estate in connection with the Adversary Proceeding. At the time the Court issued the May 21, 2007 order, the Adversary Proceeding was not completed and the Court determined that it would be premature to assess the Trustee's services as attorney that gave rise to the Disputed Fees until completion of the Adversary Proceeding. Hearing was set for July 17, 2007, to consider the Disputed Fees.

2. The Adversary Proceeding and Nick Corp.'s Proof of Claim

Nick Corp. filed the Adversary Proceeding on February 12, 2004, in the United States District Court for the Northern District of Texas, Amarillo Division. Nick Corp. asserted claims against the defendants -- JNS Aviation, Inc., JNS Aviation, LLC, JNS Aircraft Sales, LLC,

- 2 -

J. Malcom Shelton, IV, and James N. Shelton -- for (1) fraudulent transfers, (2) breach of fiduciary duties, (3) fraud, and (4) veil piercing. On September 2, 2004, JNS Aviation, LLC, the debtor (and one of the defendants), filed its voluntary chapter 7 petition initiating this bankruptcy case. On September 23, 2004, on JNS Aviation, LLC's motion, the Adversary Proceeding was referred to the Court.

Nick Corp. filed its proof of claim in this bankruptcy case in the amount of $787,885.28 on February 25, 2005; the amount of the claim is derived from a default judgment obtained by Nick Corp. in Delaware federal court against the debtor, JNS Aviation, LLC, in the amount of $1.8 million, with credits for the usage and sale of an airplane that was the subject matter of the Delaware suit.

   3. The First Motion to Compromise

On October 21, 2005, Ries, as trustee, filed a motion to compromise claims raised in the Adversary Proceeding and perceived to be held by him as trustee. By the settlement, the Trustee, on behalf of the bankruptcy estate, was to receive a settlement amount of $140,000, which amount the Trustee submitted was fair value for the fraudulent transfers claim. The settlement documents purported to dismiss *all* claims made by Nick Corp. in the Adversary Proceeding, except the fraud claim. Nick Corp. objected to the compromise. The Court construed the Trustee's compromise as an attempt to settle only the fraudulent transfers claim without consideration given to the claims for veil piercing and breach of fiduciary duties raised by Nick Corp., or without sufficient consideration of whether the Trustee even owned such claims. The

Court directed the Trustee to file a formal election with the Court stating whether he intended to administer these two causes of action or to abandon them.[1]

4. The Second Motion to Compromise and Trial of the Adversary Proceeding

On April 21, 2006, Ries as trustee, filed a second motion to compromise in which an attempt was made to clarify precisely what claims were being settled. The Court again rejected the compromise, in part because Nick Corp., as the major creditor, opposed the compromise. In the second motion to compromise, the Trustee agreed to a settlement amount of $160,000 in resolution of all claims that the Trustee held. Although the Court denied approval of the compromise, it stated in its Memorandum Opinion of September 26, 2006, that it would approve the $160,000 settlement as a resolution of the fraudulent transfers and the breach of fiduciary duties claims. Such settlement was ultimately approved by the Court, but not before the Court's denial of a motion for reconsideration of its prior denial of approval of the second motion to compromise. The Adversary Proceeding then proceeded to trial on Nick Corp.'s fraud claims against Jim Shelton and on the veil piercing claims against the stated defendants to the Adversary Proceeding. Joined for trial with the Adversary Proceeding was a claim objection filed by the Trustee to Nick Corp.'s proof of claim. The Adversary Proceeding (with the claim objection) was tried before the Court April 16-19, 2007.

5. Memorandum Opinion and Judgment in Adversary Proceeding

---

[1]Upon a review of the Court's dockets in both the bankruptcy case and the Adversary Proceeding, the Court cannot find that the Trustee ever complied with the Court's directive. However, by the second motion to compromise, the Trustee proposed to settle all three claims -- fraudulent transfers, breach of fiduciary duties, and veil piercing. In addition, the Pretrial Order entered April 11, 2007, by which time the claims for fraudulent transfers and breach of fiduciary duties were settled by the Trustee, states that the Trustee was asserting the veil piercing claims of single business enterprise, sham to perpetrate a fraud and evade existing obligations, and alter ego.

The Court issued its Memorandum Opinion in the Adversary Proceeding on September 26, 2007, and imposed liability against the defendants under the veil piercing theories asserted by Nick Corp. The Court denied the Trustee's objection to Nick Corp.'s proof of claim. Before entering a judgment in the Adversary Proceeding, the Court conducted a conference with counsel to determine whether the Trustee asserted an interest in the judgment to issue on the veil piercing claim. The Trustee advised the Court that he claimed no interest in any judgment to issue and that any such judgment should run exclusively in favor of Nick Corp. Judgment was entered in favor of Nick Corp. and against defendant James N. Shelton in the amount of $947,577.80 on the fraud claim; and in favor of Nick Corp. and against defendants JNS Aircraft Sales, LLC, J. Malcolm Shelton, and James N. Shelton, jointly and severally, in the amount of $868,894.84. The judgment further provides that Nick Corp.'s proof of claim in the JNS Aviation, LLC bankruptcy case is allowed in the amount of $787,885.28.

6. <u>Second Motion for Fees and Expenses and Court's Abatement of both the First Motion and Second Motion</u>

As stated above, hearing was set on July 17, 2007, to consider the Disputed Fees. On the same date that the Court issued its Memorandum Opinion on the Adversary Proceeding, September 26, 2007, the Court issued an interim order regarding the Disputed Fees.[2] The Court reset the first motion for compensation (as to the Disputed Fees) to January 10, 2008. The Court was of the opinion that there were still too many unresolved issues in both the bankruptcy case and the Adversary Proceeding that needed to be addressed before it could assess the attorney's

---

[2]As the Court has noted herein, it had previously determined that it was premature to assess the Disputed Fees until completion of the Adversary Proceeding. The Adversary Proceeding was not completed by the July 17, 2007 hearing, thus consideration of the propriety of the Disputed Fees was still premature.

fees. The Court needed to know if other administrative fees would be sought and concluded that the bankruptcy case needed to proceed with final administration before the Court could make a reasoned analysis of whether the requested fees resulted in an identifiable, tangible, and material benefit to the bankruptcy estate, relying upon *Andrews & Kurth, L.L.P. v. Family Snacks, Inc. (Matter of Pro-Snax Distributors, Inc.)*, 157 F.3d 414, 426 (5th Cir. 1998).

On December 10, 2007, the Trustee, again acting as counsel for the estate, filed his second motion requesting allowance of compensation and reimbursement of expenses and a hearing was set on the motion for January 10, 2008. By the second motion, the Trustee requested approval of fees in the amount of $10,430 and expenses of $120.40. By the interim order of March 25, 2008, the Court reiterated what had transpired with respect to the first motion and stated that, upon review of the second motion, the fees sought there are directly related to the Trustee's work as attorney in prosecuting the first motion for fees and expenses and in defending his position regarding same. In short, the Court found that the second motion could not be separated from the issues associated with the first motion for fees and expenses. The Court therefore abated its consideration of the two motions for fees and expenses.

The Disputed Fees (the $36,750) consist of the following: (1) $7,000 in fees related to the Trustee's first motion to compromise; (2) $13,125 in fees related to the Trustee's second motion to compromise; (3) $3,500 related to the Trustee's joinder in the motion to reconsider the Court's order on the second motion to compromise; and (4) $13,125 related to trial of the Adversary Proceeding. In addition to the Disputed Fees, the Court has before it the fees covered by the second motion for fees and compensation in which the Trustee seeks approval of fees in the amount of $10,430 and expenses of $120.40.

**Discussion**

Nick Corp. submits that the Disputed Fees represent services that rendered no identifiable, tangible benefit to the estate and, with respect to the Trustee's time attending the trial of the Adversary Proceeding, such time, given the Trustee's limited role, represents time expended as trustee and not as an attorney.

    1.  <u>Standard for Compensation under Bankruptcy Code and Case Law</u>

Section 330(a) of the Bankruptcy Code provides that the court may award reasonable compensation to a professional person so long as the services rendered were actual and necessary. 11 U.S.C. § 330(a)(1)(A).  When, as here, the professional person is also the trustee in the case, further analysis is required.  Section 327, which deals with the employment of professional persons, allows the trustee to hire himself or the trustee's law firm as counsel for the trustee.  § 327(d). "The court may authorize the trustee to act as attorney … for the estate." *Id*. In this situation, the trustee in essence wears two hats, one as trustee to the estate and one as counsel for the trustee.  *See In re Kuhn*, 150 B.R. 825, 826 (Bankr. M.D. Fla. 1993).  When the court allows the trustee  to serve as an attorney for the estate, section 328(b) guides the court in determining what is compensable to the trustee in his jobs, both as trustee and as attorney for the trustee.  *See* § 328(b).  The Code distinguishes between the two by describing the work as follows:

> The court may allow compensation for the trustee's services as such attorney … only to the extent that the trustee performed services as attorney … for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney … for the estate.

§ 328(b).  The Code defines the trustee's duties under § 704(a):

(a) The trustee shall—

(1) collect and reduce to money the property of the estate…;
(2) be accountable for all property received;
(3) ensure that the debtor shall perform his intention as specified in section 521(2)(B)…;
(4) investigate the financial affairs of the debtor;
(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;
(6) if advisable, oppose the discharge of the debtor;
(7) …, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;
...

§ 704(a). Courts have further described the trustee's duties as ministerial. *United States Trustee v. Porter, Wright, Morris & Arthur* (*In re J.W. Knapp Co.*), 930 F.2d 386, 388 (4th Cir. 1991). The distinctions are blurred, however, when one of the trustee's ministerial duties requires the assistance of counsel. *Id*. (discussing instances when the trustee needs legal assistance in negotiating and selling assets of the estate). "Only when unique difficulties arise may compensation be provided for services which coincide or overlap with the trustee's duties, and only to the extent of matters requiring legal expertise." *Id*. Of course, the importance of making this determination, especially when the attorney is also the trustee, is to insure that the trustee is not overly compensated for his statutory duties by putting them under the hat of counsel for the trustee. Under section 326(a), the trustee's compensation is capped for his statutory duties. While there is no cap on compensation for serving as an attorney for the estate, such services must be reasonable. *See* § 330(a).

Whether the court is analyzing compensation of the trustee as trustee or as counsel for the trustee, section 330(a) governs such compensation. *Id*. The court may award reasonable compensation for actual and necessary services provided. *Id*. Section 330(a)(3) further guides

the court by listing relevant factors in determining the *amount* of reasonable compensation to be

awarded. § 330(a)(3). These factors include:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

§ 330(a)(3)(A)-(F). The Code also defines what compensation is not reasonable. *See* § 330(a)(4).

The Code disallows compensation for unnecessary duplication of services, or services that are

not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the

case." *Id*.

The Fifth Circuit has defined the analysis a bankruptcy court should use to determine

attorney compensation as a "benefits analysis", requiring that the services "result[] in an

identifiable, tangible, and material benefit to the bankruptcy estate." *Pro-Snax*, 157 F.3d at 426;

*see also Quisenberry v. Am. State Bank* (*In re Quisenberry*), 295 B.R. 855, 865 (Bankr. N.D.

Tex. 2003).

In determining whether an attorney's services have materially benefitted the estate

requires that the Court consider the services and resulting fees in hindsight. *Pro-Snax*, 157 F.3d

at 426. It is not sufficient for the services to be objectively beneficial at the time they are

performed. *Id*. This is an exacting standard. *See Kaye v. Hughes & Luce, LLP*, No. 3:06-CV-01863-B, 2007 WL 2059724, at *8-9 (N.D. Tex. July 13, 2007).

According to *Kaye v. Hughes & Luce*, the standard under section 330 and the requirements of *Pro-Snax* are harmonized by employing a two-step inquiry in evaluating an attorney's services. *Id*. at *9. The bankruptcy court must first determine, under section 330(a)(1)(A), whether an attorney's services were "actual" and "necessary." *Id*. at *9. The services satisfy the actual and necessary requirement if, considered in hindsight, they resulted in an identifiable, tangible, and material benefit to the estate. *Id*. at *9 (citing *Pro-Snax*, 157 F.3d at 426; and *Quisenberry*, 295 B.R. at 865). Then, once the threshold of necessity is satisfied, the court then proceeds to calculate the *amount* of fees to be awarded. *Id*. at *9.

> In the Fifth Circuit, this is done by computing the "lodestar" amount, which is the product of the multiplication of the reasonable number of hours expended times the prevailing reasonable hourly rate in the community. *See Louisiana Power and Light Co. v. Kellstrom*, 50 F.3d 319, 323-24 (5th Cir. 1995). The lodestar is then adjusted based on the factors outlined in § 330(a)(3) (one of which is whether the services were beneficial at the time rendered) and the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See In re Cahill*, 428 F.3d 536, 539-40 (5th Cir. 2005); *In re Teraforce Tech Corp.*, 347 B.R. 838, 846 (Bankr. N.D. Tex. 2006).

*Id*. at *9. As set forth in a footnote in *Kaye v. Hughes & Luce*, the *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of

the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. The Court recognizes that the factors set forth at section 330(a)(3) and in the *Johnson* case admit of redundancy.[3]

2. <u>Analysis of Facts</u>

   (a) <u>Overview</u>

By the two motions considered here, the Trustee has requested approval of total fees and expenses of $78,909.52 ($68,359.12 on the first motion and $10,550.40 on the second motion). Of the fees and expenses requested under the first motion, the Court approved (and there was no objection to) fees and expenses of $31,609.12, leaving the Disputed Fees of $36,750. As stated above, the Disputed Fees are divided into four categories: (1) $7,000 on fees related to the Trustee's first motion to compromise; (2) $13,125 on fees related to the Trustee's second motion to compromise; (3) $3,500 related to the Trustee's joinder in the motion to reconsider the Court's order on the second motion to compromise; and (4) $13,125 related to the trial of the Adversary Proceeding. The entirety of the fees and expenses requested by the second motion, $10,550.40, are presently under consideration, as well. As the Court stated in its order of March 25, 2008, the fees and expenses sought by the second motion are "directly related to the [T]rustee's counsel's work in prosecuting his prior motion for fees and expenses and in defending his position regarding same."

---

[3]The lodestar should be adjusted according to a *Johnson* factor only if that factor is not already taken into account by the lodestar. *In re Teraforce Technology Corp.*, 347 B.R. 838, 847 (Bankr. N.D. Tex. 2006). The bankruptcy court has considerable discretion in applying the *Johnson* factors, but it should explain the weight given to each factor that it considers and how such factor affects its award. *Id.*

The Court makes the initial observation that Nick Corp. had no objection to almost half of the fees sought by the first motion. This is important within the context of the first motion as the backup billing information included with the first motion reflects that Ries had expended 377.15 hours out of a total of 384.70 hours for attorney's services provided in connection with the Adversary Proceeding. This is 98% of the total time expended. Thus, while most all the attorney's services provided by the Trustee relate to the Adversary Proceeding, Nick Corp.'s objections go to specific entries for work performed in connection with the two motions to compromise, the hearings on same, and the actual trial of the Adversary Proceeding.

(b)  <u>Unique Nature of the JNS Aviation, LLC Bankruptcy Case</u>

The Court assesses the Trustee's requested fees and expenses within the context of the particular and unique circumstances of this bankruptcy case. This is not a typical bankruptcy case. The debtor, JNS Aviation, LLC, is not an individual and thus receives no discharge in chapter 7. *See* § 727(a)(1). This begs the question of why JNS Aviation, LLC filed this chapter 7 proceeding. The nature of this bankruptcy case and the manner in which it was filed made it a difficult case for the Trustee. The Court addressed this in its Memorandum Opinion of September 26, 2006, on the second motion to compromise. There, the Court stated as follows:

> The Trustee has been placed in an exceedingly difficult position in this case. The debtor's schedules are of little help. Every statement, representation, and disclosure is conditioned in some fashion. The condo in Colorado *may* be owned by the debtor; its value "may not be accurate." The only other asset listed is the "fraudulent transfer claim" with no mention made of the other claims asserted by Nick Corp. Nick Corp.'s judgment of $1.8 million is listed as "disputed" although it was a final judgment. There may be three creditors holding priority tax claims or there may be as many as fourteen. James Shelton signed the schedules based on the "best information reasonably available." This bankruptcy case was obviously filed as a litigation tactic. The Sheltons and the other defendants preferred to deal with a

> bankruptcy trustee rather than Nick Corp. The result is that the Trustee is administering a bankruptcy case in which the only asset in the case is a pending lawsuit in which the Trustee seeks a recovery against the very parties that are charged with the responsibility of insuring that the debtor's assets are fully disclosed and recovered.

September 26, 2006 Memorandum Opinion at 17-18.

As any bankruptcy practitioner knows, the terms "case" and "proceeding" (as in bankruptcy case and adversary proceeding) in bankruptcy practice refer to two different things. The bankruptcy case is what is initiated by the debtor's voluntary petition under chapter 7, 11, 12, or 13, and it is, generally, the "context in which the affairs of the insolvent debtor and the rights of the creditors are dealt with . . . ." NORTON BANKRUPTCY LAW AND PRACTICE: NORTON QUICK REFERENCE BANKRUPTCY CODE AND RULES, at page *x* (rev. ed. 2008). Proceedings on the other hand are the lawsuits (adversary proceedings) or contested matters (initiated by motion) within the bankruptcy case "which resolve the disputes and actions of creditors, trustee, and the debtor in respect to the marshaling, planning and administration of the estate." *Id.* In typical bankruptcy taxonomy, the bankruptcy case is the broader category with adversary proceedings and contested matters arising within the bankruptcy case. The instant case conflates these categories because the Adversary Proceeding here *is* the bankruptcy case. This is underscored by the fact that the time expended by the Trustee for legal services on the Adversary Proceeding accounts for 98% of the total time expended. The Trustee was, in effect, thrust into the middle of a difficult and complex piece of litigation between Nick Corp., the debtor's creditor, and the principals of the debtor. Within this context, the principal obligation of and the main benefit to confer by the Trustee was to administer the Adversary Proceeding as *the* asset in the case and to

therefore effect the completion of the bankruptcy case. At the least, the Trustee accommodated the parties to the litigation. (While the Adversary Proceeding took longer to complete than what the Court preferred, the Court cannot, for the most part, conclude that the Trustee's actions and decisions caused the delays.)

While the Adversary Proceeding subsumed the bankruptcy case, the nature of the bankruptcy case itself (a corporate chapter 7 debtor with basically one creditor and one asset that is a lawsuit brought by the creditor), also enhanced the difficulties faced by the Trustee in evaluating the causes of action in the Adversary Proceeding. The September 26, 2006 Memorandum Opinion addressed this point, as well. There, the Court discussed the threshold question of whether the veil piercing claims belonged to the bankruptcy estate, and so doing, examined the three Fifth Circuit opinions of *In re Mortgage America Corp.*, 714 F.2d 1266 (5th Cir. 1983), *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987), and *Matter of Educators Group Health Trust*, 25 F.3d 1281 (5th Cir. 1994), and stated as follows:

> Nick Corp.'s claim for piercing incorporates allegations that the debtor and the other defendants are alter egos of one another, that they all constitute a single business enterprise, and that the debtor JNS Aviation was used as a sham to perpetuate a fraud. Upon applying the foregoing Fifth Circuit precedent, particularly the analysis of *Matter of Educators Group Health Trust*, to the piercing allegations here, the Court arrives at three mutually exclusive conclusions. First, if JNS Aviation were a typical debtor and therefore had several creditors, the Court could conclude that the piercing claims impact the entire creditor body as the net effect of such claims, if true, is to deprive the debtor entity of assets that could be used to satisfy the claims of all creditors. Second, given that Nick Corp. actually holds the only major unsecured claim against the debtor, and given the magnitude of such claim, such circumstance serves to blur the distinction between injury to the corporation and injury to the creditor. Third, were the Court simply considering the settlement as a compromise of the claims for fraudulent transfer and breach of fiduciary duties, the settlement would be approved. In this regard, the Trustee thoroughly considered and evaluated such claims within the parameters of the three-part factor driven test

- 14 -

employed in the Fifth Circuit – the probability of success, the complexity of the litigation, and other factors bearing on the compromise. Given that the Trustee has sufficiently considered the relevant factors in reaching the compromise and, in so doing, has determined a compromise of such claims would be fair and equitable and in the best interests of the estate, taking into account the terms of the settlement with the likely rewards of going forward with litigation, the Court would likewise be satisfied that the standard for approval has been met. Problems arise, however, when the veil piercing theories are included within the compromise. First, as a threshold, it appears there may be a fundamental misunderstanding between the Trustee and the defendants concerning what is being settled. Given the veil piercing theories are arguably property of the bankruptcy estate and thus the Trustee is responsible for administering such asset, there should be no question between the parties concerning whether the settlement resolves the veil piercing theories in full or not. The defendants' position is that all conceivable claims under veil piercing are resolved. On this point, the Trustee is somewhat ambivalent – he is settling what he owns. The second problem is that given the virtual elimination of the distinction between injury to the debtor and its creditor Nick Corp., Nick Corp.'s position regarding the settlement becomes, in the Court's view, the critical factor in determining whether to approve the settlement. *See Matter of Foster Mortg. Corp.*, 68 F.3d 914.

September 26, 2006 Memorandum Opinion.

    c. <u>Consideration in Hindsight</u>

With the foregoing analysis as a backdrop, the Court, now, in hindsight, considers the propriety of the fees and expenses sought here. The Court notes that the Adversary Proceeding is completed and judgment entered and thus the bankruptcy case has been fully administered; the Trustee recovered $160,000 from the settlement; the priority administrative claims should be paid in full, to the extent allowed. This will leave a balance of funds, albeit small, to use in making a pro rata payment against Nick Corp.'s claim in the bankruptcy case. However, Nick Corp. also holds its judgment against the third-party defendants to the Adversary Proceeding. This judgment may result in a full satisfaction of Nick Corp.'s claim. In this regard, the Court reiterates that, after the issuance of its Memorandum Opinion on the Adversary Proceeding, the

Trustee made no claim to the judgment and, in fact, affirmatively declared that the judgment should flow to Nick Corp. Any recovery on the judgment does not, therefore, wash through the bankruptcy estate. Nick Corp. can hardly complain of such result.

The Trustee, acting as an attorney, made certain tactical decisions throughout the litigation. Nick Corp. obviously disagreed with and took offense to certain decisions and actions taken by the Trustee; the defendants in the Adversary Proceeding, in addition, disagreed with certain positions taken by the Trustee; and, the Court, as well, questioned (and still does) certain positions taken by the Trustee during the course of the litigation. However, while the Court must consider in hindsight the necessity and benefit conferred by the Trustee's legal services, the Court does not second guess every decision and position taken by the Trustee. The Court does not construe the benefits analysis to require that each expenditure of time result in a quantifiable benefit to the estate.

Nick Corp. does not contend that the Trustee's time is excessive or that his rate is too high. Instead, Nick Corp. contends that the time expended by the Trustee during the trial of the Adversary Proceeding was as trustee rather than as an attorney. The Court disagrees. Apart from the fact that the Trustee participated in the trial by examining witnesses and making legal arguments at opening and closing, he is certainly entitled, given the unique circumstances of this case, to attend the trial of the Adversary Proceeding wearing his lawyer hat. The Court is convinced that the fees claimed by the Trustee pale in comparison to either the fees charged by counsel for Nick Corp. or counsel for the defendants to the Adversary Proceeding. Nick Corp.

did not object to almost half of the Trustee's time, most all of which relates to the Adversary Proceeding.

    d. <u>Services Provided in Connection with First Motion to Compromise</u>

The Court is satisfied that, except for the fees arising from the services expended in connection with the first motion to compromise, the Disputed Fees are compensable. As set forth above, the initial compromise was for $140,000 in settlement of the fraudulent transfers claims. Despite this, the settlement papers provided for the Trustee's release of *all* claims, presumably including the breach of fiduciary duties claims and the piercing claims. Upon hearing on the Trustee's first motion to compromise, the Court determined that the Trustee had not sufficiently considered the other claims potentially held by the estate, the breach of fiduciary duties claim and the veil piercing claims. The Court denied approval of the settlement and instructed the Trustee to file a formal election with the court stating whether he intended to administer these two causes of action or to abandon them.

The Trustee knew or should have known that the broad release language in the settlement papers was contrary to the actual settlement and would invite problems. His after-the-fact attempt to justify such settlement as, in effect, a compromise of all claims cannot be characterized as reasonable. The Court is convinced that the defendants would not have agreed to the settlement without the broad release language and that they would have certainly taken the position that all claims were settled as a result of the release language. The uncertainty and lack of specificity and clarity concerning the terms of the settlement then proposed did delay the settlement process and ultimately the trial of the Adversary Proceeding. The Court will,

therefore, reduce the requested fees by $3,500, which represents one-half of the Disputed Fees related to the first motion to compromise.

(e) Fees and Expenses Under the Second Motion for Compensation

With respect to fees and expenses covered by the second application (fees of $10,430 and expenses of $120.40), the Court has previously characterized such fees and expenses as reflecting services rendered by the Trustee, as attorney, in prosecuting and defending his fees and expenses sought under the first motion. Concerning the propriety of awarding such fees and expenses, the Court follows *In re Teraforce Technology Corp.*, 347 B.R. 838 (Bankr. N.D. Tex. 2006) where the court held that while debtor's counsel is entitled to compensation for the preparation of a fee application pursuant to section 330(a)(6), counsel is not entitled to compensation for defending such fee application against objections filed in good faith. *Id*. at 866-67. Upon a review of the billing statement submitted in support of the Trustee's second application, it reflects that Ries expended 34.8 hours at $175.00 an hour, or $6,090, for services rendered in connection with defending his prior fee application. The Court concludes that Nick Corp.'s objections were made in good faith. Accordingly, the Court will discount the requested fees on the second motion by the sum of $6,090. The expenses of $120.40 will be allowed.

**Conclusion**

Upon the foregoing, the Court approves the Trustee's attorney's fees in the amount of $37,590 and authorizes the reimbursement of expenses of $120.40. Such fees and expenses represent services rendered by the Trustee in his capacity as an attorney; such services were actual and necessary and conferred an identifiable, tangible, and material benefit to the estate. § 330(a);

*Matter of Pro-Snax Distrib., Inc.*, 157 F.3d at 426.  The amount is derived from the lodestar method.  § 330(a)(3).  The time expended is reasonable given the complexity and nature of the issues confronted by the Trustee.  *Id*. at (a)(3)(D).  The rate charged is certainly within the range of what the Court typically sees in bankruptcy cases.  And while the Court questions certain decisions and positions taken by the Trustee, which cannot, in the Court's view, be separated from the legal analysis made by the Trustee, the Court concludes that the amount awarded is proper given the results obtained.  *See Johnson*, 488 F.2d at 717-19.

### End of Memorandum Opinion ###